## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

JEFFREY W. STONE,
GEORGE WILLIAMS BURT      :
INDIVIDUALLY AND ON BEHALF   :
OF OTHERS SIMILARLY SITUATED   :
              :
   **Plaintiffs,**        :
              :
**v.**              :     **No. 2:14cv209**
              :
**SRA INTERNATIONAL, INC.,**     :
              :
   **Defendant.**       :

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' "Motion for Certification of Collective Action Pursuant to

§ 216(b) of the Fair Labor Standards Act." (ECF No. 17); see 29 U.S.C. § 216(b). Plaintiffs

brought this action, on behalf of themselves and others similarly situated, to recover overtime

compensation that they were allegedly entitled to under the Fair Labor Standards Act ("FLSA").

See 29 U.S.C. § 207. [1] The parties entered consent to proceed before a United States Magistrate

Judge, and all further proceedings in the case were referred in accordance with 28 U.S.C. §

636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 11).

   Plaintiffs now ask the Court to conditionally certify a collective action class and facilitate

notice to potential class members. Plaintiffs filed their motion to certify a collective action on

September 3, 2014. Defendant SRA International, Inc. ("Defendant" or "SRA") filed a detailed

---

[1] Because "courts generally allow opt-ins to be filed at any time in the action ," the Court will refer to "Plaintiffs" to include not only Jeffrey Stone and George Burt, but also the persons who have filed consent to join this suit as a party plaintiff. Piper v. RGIS Inventory Specialists, Inc., C-07-00032, 2007 WL 1690887, at *6 (N.D. Cal. June 11, 2007). However, for the sake of factual clarity, the Court will refer to Stone and Burt as "Named Plaintiffs."

opposition, Plaintiffs replied, and the Court granted Defendant leave to file a sur-reply. The Court heard argument on this motion, among others, on October 14, 2014. For the reasons stated on the record and as set out below, Plaintiffs' motion to conditionally certify (ECF No. 17) is GRANTED IN PART.

## I. BACKGROUND

Plaintiffs are employees and former employees of SRA, "a leading provider of IT solutions and professional services to government organizations." Def.'s Br. (ECF No. 27, at 10). SRA employed the Named Plaintiffs, Stone and Burt, to work pursuant to the Military Sealift Command Afloat Contract ("Afloat") out of SRA's Chesapeake, Virginia office. See id. Stone worked as a "Network Administrator," while Burt worked as a "Systems Administrator." Pl.'s Br. (ECF No. 18, at 3); Def.'s Br. (ECF No. 27, at 11). Plaintiffs allege that SRA failed to pay overtime compensation in violation of the FLSA, 29 U.S.C. § 207. SRA classified all Network Administrators, such as Stone, as exempt from the FLSA's overtime provisions because they were "professionals" within the meaning of the Department of Labor's regulations governing the FLSA. Def.'s Br., Ex. R (ECF No. 27-19, at 1); e.g., 29 C.F.R. § 541.301. SRA classified all Systems Administrators, such as Burt, as exempt from the FLSA's overtime provisions because they were "Computer Programmer[s] and System Analyst[s]" exempt under the regulations. Def.'s Br., Ex. O (ECF No. 27-16, at 1); see 29 C.F.R. § 541.400.

Plaintiffs allege that Systems Administrators "essentially . . . only apply and work within technological parameters already designed and established by an unassociated party" – their tasks essentially involve implementing "plug-and-play technology." Pl.'s Br. (ECF No. 18, at 6). Plaintiffs allege that they "performed no managerial duties or exempt tasks" and "do not have the requisite specialized training to be exempt for their job duties." Compl. ¶ 20 (ECF No. 1, at 4).

2

Instead, Plaintiffs allege that their "primary job duties involve manual labor and adherence to standard operating procedures." Pl.'s Reply (ECF No. 33, at 5). Additionally, Plaintiffs maintain that the core duties were and are "essentially the same" for all Systems and Network Administrators working nationwide. Id. at 10.

As a government contractor, SRA provides its services pursuant to more than 130 contracts negotiated with various government agencies. Def.'s Br. (ECF No. 27, at 8). The company alleges that although "an employee's job title may remain the same, his or her duties can vary significantly depending on the type of tasks necessitated by a particular contract." Def.'s Br. (ECF No. 27, at 11) (citing Decl. of Chris Herndon). SRA proffers that among its thirty-five Network Administrators at fifteen locations and 119 Systems Administrators at thirty locations, "[t]he type of work performed by Network and Systems Administrators is wide-ranging." Id. at 12-13. SRA alleges that "[f]requently, members of the purported class encountered complex and unique systems issues, resolution of which required the use of their experience, judgment, and discretion" and that Administrators also "author or contribute to" standard operating procedures. Id. at 15. (citing Decl.s of Saqib Raheem and Thomas Mullan). As a result, SRA argues that Plaintiffs have not made even the modest factual showing necessary to conditionally certify a nationwide class under the FLSA.

## II. LEGAL STANDARD

The FLSA makes employers liable to employees for unpaid overtime compensation in violation of its provisions. 29 U.S.C. § 216(b); see also id. § 207. A wronged employee can maintain an action "to recover the liability . . . for and in behalf of himself . . . and other

3

employees similarly situated." [2]  § 216(b).  To join a suit as a party plaintiff, the other employees must be "similarly situated" and give their written consent to "opt-in."  See id.; Allen v. Cogent Commc'ns, Inc., 1:14cv459, 2014 WL 4270077, at *2 (E.D. Va. Aug. 28, 2014).  The collective action serves the objectives of the FLSA "by facilitating a resolution in a single proceeding of claims stemming from common issues of law and fact, and [aiding] in the vindication of plaintiffs' rights by lowering the individuals' costs by pooling claims and resources."  Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).

Assembling a class under § 216(b) involves two stages: the notice or conditional certification stage and the decertification stage.  Gregory v. Belfor USA Grp., Inc., No. 2:12cv11, 2012 WL 3062696, at *2 (E.D. Va. July 26, 2012); Purdham v. Fairfax Cnty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009).  The discovery process typically divides the two stages.[3]  At the first stage, the court decides whether to provide initial notice to potential collective action members.  Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 562 (E.D. Va. 2006); see generally Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("District courts have discretion in appropriate cases to implement . . . Section 216(b) . . . by facilitating notice to potential plaintiffs.").  The plaintiffs carry the evidentiary burden at this stage, but it is "fairly lenient" because the court often has only "minimal evidence" without the

---

[2] "Section 216(b) does not define "similarly situated," and the Fourth Circuit has not yet interpreted the term.  However, courts in this district have adopted a two-stage analysis to determine when plaintiffs are similarly situated."  Allen, 2014 WL 4270077, at *2 (citing Houston, 591 F. Supp. 2d at 831).

[3] Here, Defendant argues that this case is closer to the second stage than the first because "Plaintiffs have already engaged in significant discovery" including three corporate depositions, and receipt of Defendant's responses to interrogatories, requests for admissions, and request for production of documents. Def.'s Br. (ECF No. 27, at 21).

aid of discovery.[4]  Id. (citations omitted).  "On the other hand, the 'similarly situated' requirement is not 'invisible'" – "[m]ere allegations will not suffice."  Gregory, 2012 WL 3062696, at *2 (quoting Houston, 591 F. Supp. 2d at 831); Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).  "The primary focus in this inquiry is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'"  Houston, 591 F. Supp. 2d at 831 (quoting Choimbol, 475 F. Supp. 2d at 563).  "There must be sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member."  Id. at 832.

If the defendant files a motion for decertification "after discovery is virtually complete," then the court proceeds to the second stage of certification.  Id.  Upon such a motion, the court applies a "heightened, fact-specific standard" to determine whether the collective plaintiffs are sufficiently similarly situated to warrant proceeding as a class.  Id.  If they are not, the court decertifies the collective action and the original plaintiffs may pursue their individual claims.  Id.  In seemingly rare cases, the court may collapse the two-stage certification process and deny certification outright when there is sufficient evidence in the record at the notice stage to reveal that certification of the collective action is not appropriate.  Purdham, 629 F. Supp. 2d at 547.[5]  This is not one of those cases.

---

[4] "Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action, see 29 U.S.C. § 256(b), courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding, typically before any significant discovery, upon an initial showing that the members of the class are similarly situated." Houston v. URS Corp., 591 F. Supp. 2d at 831.

[5] In Purdham, the putative class of plaintiffs was Fairfax County Public Schools employees, "who performed security, athletic coaching, after school monitoring, [and] ticket-taking at athletic events." 629

Here, the Court will apply the traditional, "fairly lenient" standard to this stage one review. Choimbol, 475 F. Supp. 2d at 562. Courts within this Circuit have consistently applied the two-stage approach to collective action class certification. See, e.g., Allen, 2014 WL 4270077, at *2; Houston, 591 F. Supp. 2d at 831; Gregory, 2012 WL 3062696, at *2; Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 566 (D. Md. 2012); D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995). Collapsing the two stages is reserved for those cases when it is clear to the Court that certification is not appropriate. In fact, collapsing the two stages does not involve a different standard of review for conditional certification, but rather performing two analyses in one decision. See Purdham, 629 F. Supp. 2d at 547. Indeed, decertification, the second stage, occurs only "[a]fter most of the discovery has taken place and the matter is ready for trial." Id. "At that point, the court makes a factual determination as to whether the class is truly 'similarly situated.'" Id. This case is not at that point.[6] To the contrary, it does not appear that anyone has deposed or obtained discovery from the seven plaintiffs who filed notice of their consent to join during the pendency of Plaintiffs' motion. Most importantly though, the evidence before the Court is not sufficient to warrant denying certification outright. As discussed below,

---

F. Supp. 2d at 546. The court found: "No county-wide guidelines enforce a uniform distribution of supplements or regulate the number of hours that employees can devote to coaching and other volunteer activities. And the number of hours that different coaches work varies widely between sports and between coaches at different schools within the same sport. The amount of money that different coaches at different schools receive as a 'supplement'—and the amount they receive per hour of coaching—also varies significantly." Id. at 549. " Because of the probable necessity of an individualized FLSA coverage determination for each member of the potential class" the court denied certification. Id. By contrast here, there are common guidelines, job titles, and job descriptions that are at least applicable to the putative class members. See, e.g., Dep. of Natasha Caines (ECF No. 33-1, at 5, 8); Dep. of Jennifer Peacock (ECF No. 27-2, at 6) ("[T]he job description gives a framework for the job. The general responsibilities helps create the job level or the grades that they are at. And then specifically we use requisitions to say more specifically based on the contract, the program, what those specific duties are.").

[6] Plaintiffs' counsel could have conducted additional discovery to bolster their argument for nationwide class certification, but that deficiency does not transform the case's factual progress into one that calls for collapsing the stages and denying certification outright. Instead, it affects the scope of certification and notice. See infra Part. III.

Plaintiffs need only make "some preliminary factual showing that a similarly situated group of potential plaintiffs exists." Id. (quoting D'Anna, 903 F. Supp. at 894); see also Butler, 876 F. Supp. 2d at 572 (requiring "some factual nexus connecting them to other potential plaintiffs as victims of an unlawful policy").

### III. ANALYSIS

Defendant has pressed two arguments in opposing Plaintiff's request for nationwide certification and notice. First, Defendant maintains that there is an "essential prerequisite" that Plaintiffs "establish that they and the putative class members are victims of a common policy or plan that violated the law." Def.'s Br. (ECF No. 27, at 17-18) (emphasis in original). Second, Defendant argues that Plaintiffs have failed to carry their factual burden of showing that the putative class and two Named Plaintiffs themselves are similarly situated. See, e.g., Def.'s Br. (ECF No. 27, at 22-23).

Conversely, Plaintiffs rely on Defendant's use of company-wide job descriptions to classify all Systems and Network Administrators as exempt, to argue that they "certainly have enough evidence at this stage to merit such notice" to all SRA Network Administrators and Systems Administrators nationwide. Pl.'s Reply (ECF No. 33, at 6) (citing Dep. of Natasha Caines, former compensation analyst for SRA who conducted a FLSA review). Because Ms. Caines made exemption decisions nationwide allegedly without assessing employees' activities under individual contracts, all Network and Systems Administrators nationwide were subject to the same allegedly unlawful classification. However, Plaintiffs have only presented evidence of the activities performed by Named Plaintiffs on a single contract – the Afloat contract servicing the IT needs of the Navy's Military Sealift Command.

Importantly, whether Plaintiffs are entitled to overtime compensation under the FLSA is not before the Court. See, e.g., Choimbol, 475 F. Supp. 2d at 563. The only question before the Court is whether the Named Plaintiffs have carried their burden to show that there are persons sufficiently similarly situated to Named Plaintiffs to raise similar legal issues as to coverage, exemption, or nonpayment of overtime "arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." De Luna-Guerrero v. N.C. Grower's Ass'n, Inc., 338 F. Supp. 2d 649, 654 (E.D. N.C. 2004) (quoting Kearns, The Fair Labor Standards Act, § 18.IV.D.3). Because the Court finds that the Afloat Contract teams constitute a manageably similar class of potential plaintiffs, it will GRANT IN PART Plaintiff's motion.

### A. Plaintiffs Have Demonstrated the Existence of a Manageable Class.

Plaintiffs seek to certify a collective action for all Systems and Network Administrators who work or have worked for SRA.[7] Plaintiffs allege that, at least with respect to the Afloat team members, "they perform(ed) essentially the same duties, working similar hours, with similar travel requirements to work onboard MSC ships, where their primary job duties involve manual labor and adherence to standard operating procedures." Pl.'s Reply (ECF No. 33, at 5). Plaintiffs further allege that the rest of SRA's Systems and Network Administrators nationwide perform similar duties and are thus, similarly misclassified as exempt. The evidence on the record is sufficient, under the lenient standard involved, to demonstrate that Systems and Network Administrators working on the Afloat contract are similarly situated in that they perform the same core duties and allege the same legal claims under the FLSA.

---

[7] By using these terms, Plaintiffs assert that they seek to include all SRA Senior Network Administrators, Network Administrators, Associate Network Administrators, Master-System Administration, Senior System Administrators, System Administrators, and Associate System Administrators. Pl.'s Reply (ECF No. 33, at 5 n.2).

Again, the notice stage of conditional certification merely requires that there be evidence of similar legal issues in a "manageably similar factual setting." Choimbol, 475 F. Supp. 2d at 563. The differences that Defendant points out between Named Plaintiffs Burt and Stone is largely irrelevant. Defendant argues that because Burt is a Systems Administrator and Stone is a Network Administrator and they have different duties, Plaintiffs plead themselves out of certifying a class. See Def.'s Br. (ECF No. 27, at 29-30). Instead, what Plaintiffs have shown is that they are representatives of two subclasses: Network Administrators and Systems Administrators. Indeed, the two job titles have different job descriptions, and Defendant classified them as exempt under two different Department of Labor regulations. See Def.'s Br., Ex. R (ECF No. 27-19, at 1); 29 C.F.R. § 541.301; Def.'s Br., Ex. O (ECF No. 27-16, at 1); 29 C.F.R. § 541.400. The distinctions between the two subclasses though "do not work to subject Plaintiffs to factually distinct defenses which would work to undermine the benefit associated with collective actions." Choimbol, 475 F. Supp. 2d at 564. In order to prove its defenses, Defendant will need to present evidence of the same facts: on-the-job activities and duties and pay provisions of the plaintiffs. See 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."); Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) ("[E]xemptions are to be narrowly construed against the employers seeking to assert them . . . ."); Koppinger v. Am. Interiors, Inc., 295 F. Supp. 2d 797, 800 (N.D. Ohio 2003) ("The issue of how an employee spends his time is a question of fact, while the issue of whether his activities fall within an exemption is a question of law.").

Moreover, Plaintiffs need not prove the merits of their claims or oppose decertification at this stage as Defendant appears to contend. The issues and arguments raised by Defendant,

9

"though certainly pivotal to the Court's ultimate determination of whether Plaintiffs will proceed to trial as a collective class, [are] not essential to 'stage one' analysis for conditional certification." Choimbol, 475 F. Supp. 2d at 563. Defendant's proffered requirement of "establish[ing] that [Plaintiffs] and the putative class members are victims of a common policy or plan that violated the law" begs a resolution on the merits, i.e., whether Defendant's classification of Plaintiffs as exempt was unlawful. Def.'s Br. (ECF No. 27, at 17-18) (emphasis in original); see also Gregory, 2012 WL 3062696, at *5 ("[T]he Court declines Defendant's invitation to engage in resolving factual disputes, decide substantive issues going to the merits of the case, or make credibility determinations.") (marks omitted). It is true that Plaintiffs do need to "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Choimbol, 475 F. Supp. 2d at 564 (citing De Asencio v. Tyson Foods, 130 F. Supp. 2d 660, 662-63 (E.D. Pa. 2001); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91 (S.D.N.Y. 2003)). However, the operative burden on Plaintiffs at this stage is only the "modest factual showing" that they were denied overtime compensation such as by a "common policy or plan" to classify them as exempt. Id. To require more would force Plaintiffs to disprove Defendant's affirmative defense that Plaintiffs were, in fact, exempt. See Arnold, 361 U.S at 392; Turner v. Human Genome Science, Inc., 292 F. Supp. 2d 738, 744 (D. Md. 2003). Hence, Defendant's focus on Plaintiff's alleged failure to prove a violation of the FLSA is inapposite at this stage.

Indeed, Plaintiffs have supplemented the allegations in their Complaint with declarations, deposition testimony, and other evidence sufficient to demonstrate that Defendant's policy may have subjected them to violations of the FLSA. Both Named Plaintiffs and every other SRA employee with their same job title on the Afloat contract did not receive overtime compensation

for hours worked in excess of forty in a workweek because of SRA's human resources policy to exempt those employees from overtime pay provisions. See, e.g., Choimbol, 475 F. Supp. 2d at 564; De Luna-Guerrero, 338 F. Supp. 2d at 654 (requiring a "manageably similar factual setting with respect to their job requirements and pay provisions"). Defendant argues that an "alleged misclassification, in and of itself cannot be the alleged 'common policy or plan' that violates the law." Def.'s Br. (ECF No. 27, at 26).[8] Here, however, Plaintiffs have presented more than just the paragraphs of allegations in their complaint.

If the classification resulted in SRA's nonpayment of overtime wages and the classification was unlawful because Plaintiffs were not exempt under the FLSA, then that allegation would appear to state a claim for relief under 29 U.S.C. §§ 207, 216(b). Their misclassification would be a "policy or plan that violated the law." Purdham, 629 F. Supp. 2d at 548; Gregory, 2012 WL 3062696, at *5 (quoting Longcrier v. HL-A Co., 595 F. Supp. 2d 1218, 1240 (S.D. Ala. 2008) (noting that with respect to the plaintiffs' allegation of misclassification, the defendant's "denial of a common plan or policy . . . 'should not be conflated into a failure by

---

[8] See Colson v. Avnet, Inc., 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) ("As a matter of both sound public policy and basic common sense, the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes."). But cf. Gregory v. Belfor USA Group, Inc., No. 2:12cv11, 2012 WL 3062696, at *5 (E.D. Va. July 26, 2012) (holding that misclassification alone could serve as a common policy or plan); Montoya v. S.C.C.P. Painting Contractors, Inc., No. CCB-07-455, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008) ("[T]he potential misclassification of the plaintiffs [as independent contractors], in violation of FLSA's mandate that 'employee' be interpreted broadly, could be enough for class certification."); Pelczynski v. Oranage Lake Country Club, 284 F.R.D. 364, 368 (D. S.C. 2012) ("[W]hether the plaintiffs 'were victims of a common policy or plan that violated the law' is a key factor to consider.") (quoting Purdham, 629 F. Supp. 2d at 548) (emphasis added)); Slavinski v. Columbia Ass'n, Inc., CIV. CCB-08-890, 2011 WL 2119231, at *1-2 (D. Md. May 27, 2011) (clarifying, in ruling on a motion to reconsider, that the court did not deny the plaintiff's motion for conditional certification solely because she relied on her own affidavits, but because the affidavits lacked facts to show whether any other employees were similarly situated); Lusardi v. Xerox Corp., 118 F.R.D. 351, 380 (D. N.J. 1987) (holding that, in an ADEA claim, simply filing a complaint with allegations does not satisfy the "similarly situated" requirement).

Plaintiffs to identify any such policies.'"). To the extent that Plaintiffs need to allege a more coherent, pervasive, or systematic policy, the Court finds that the consistency with which SRA applied FLSA exemptions to its job titles on the Afloat contract, combined with the sworn testimony of the Named Plaintiffs regarding their actual duties, is enough. See, e.g., Houston v. URS Corp., 591 F. Supp. 827, 834 (E.D. Va. 2008).

In Houston this Court held that "Plaintiffs have sufficiently alleged a 'common policy or plan' in that all inspectors were classified as independent contractors rather than employees, that all inspectors were compensated in a similar manner on a 'per inspection' basis, and that all inspectors were required to conduct inspections in accordance with FEMA guidelines." Id. It further acknowledged that, "[i]ndeed, at least one court has concluded that an alleged misclassification as independent contractors alone could be enough for conditional certification." Id. (citing Montoya v. S.C.C.P. Painting Contractors, Inc., No. CCB-07-455, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008)).

In Choimbol it was enough for class certification that: the plaintiffs alleged that the defendant "engaged in a common policy and scheme which violated the FLSA, whether done by requiring 'deposits' or withholding of wages," the named plaintiffs consisted of over sixty individuals, all immigrant workers alleging common violations, and the plaintiffs "provided the Court with Affidavits of at least one [defendant] manager suggesting a common policy affecting Plaintiffs." 475 F. Supp. 2d at 564.

In Gregory v. Belfor USA Group, Inc., this Court granted conditional class certification based on the evidence presented by two named plaintiffs challenging their employer's classifying them as exempt under the administrative professional exemption. 2012 WL 3062696, at *1-3. The Court found the plaintiffs similarly situated upon their allegations and supporting

12

declarations that they performed strictly administrative tasks and consistently worked more than forty hours per week, without compensation. Id. at *4. Moreover, the Gregory plaintiffs "assert[ed] that the mechanism Belfor employed to deprive them of their overtime pay was to misclassify them as 'Exempt' . . . ." Id.

Just like the plaintiffs in Houston, Choimbol, and Gregory, Plaintiffs have alleged sufficient facts and presented sufficient evidence to demonstrate similarity with respect to others employed on the Afloat contract asserting claims under the FLSA. Although their evidence may be limited and subject to genuine dispute by Defendant, Plaintiffs have "made a sufficient showing that the nature of the work performed by other [Network and Systems Administrators] is at least similar to their own." Houston, 591 F. Supp. 2d at 834. The two Named Plaintiffs have also provided sworn testimony that the job descriptions upon which their classifications are based do not accurately reflect their actual duties. See Burt Dep. (ECF No. 33-3, at 8-13); Stone Dep. (ECF No. 33-2, at 2). They both maintain that their duties, as Afloat team members working on and off ships, require more physical labor, less formal education and research, and routine application of standard operating procedures. See, e.g., Burt Dep. (ECF No. 33-3, at 9, 13). Moreover, Ms. Caines testified in her deposition that across SRA facilities, employees in a given position have the same core responsibilities and duties. Caines Dep. (ECF No. 33-1, at 5). With respect to the similarity of other Afloat team members, the particular duties of employees like Systems and Network Administrators are defined at the contract-level. See Peacock Dep. (ECF No. 27-2, at 6). Ms. Peacock, of SRA's human resources department, stated:

> A. No. So a network administrator is -- the job description gives a framework for
> the job. The general responsibilities helps create the job level or the grades that
> they are at. And then specifically we use requisitions to say more specifically
> based on the contract, the program, what those specific duties are.

Q. So if I'm a systems administrator not working in Chesapeake under the Afloat contract, I am in, I don't know, your Arlington office, I'm still going to be basically the same person in terms of background and responsibilities as a systems administrator in the Chesapeake office?

A. I would say the general background and responsibilities would be the same, specific duties would probably be different.

Q. Daily tasks would be different because of whatever is called for under the contract and all the other variables?

A. Correct.

Peacock Dep. (ECF No. 27-2, at 8-9). Thus, within the MSC Afloat contract there is no evidence that the duties and pay provisions of Systems and Network administrators deviated so much so that they were not similarly situated. They all performed similar information and technology-based services and were classified as exempt based on the company's written description of those "core duties."

Additionally, it is probative that seven additional plaintiffs from the Afloat contract have opted in during the pendency of this motion. These seven employees or former employees affirmed by agreeing to join the suit filed by their Afloat colleagues, Burt and Stone, that they were employed by SRA as Systems or Network Administrator at some time between May 7, 2011 to present, they regularly worked more than forty hours per week and were not paid overtime, they followed standard operating procedures at least 75% of the time as an employee, they did not earn a salary over $100,000 per year, and they did not supervise two or more people for at least eighty hours per pay period or did the same work as those supervised. (ECF No. 33-5, at 4). At the hearing, Plaintiffs' counsel acknowledged that multiple opt-in plaintiffs had reviewed the Complaint. With seven additional opt-in plaintiffs, nine of the thirty-nine Systems

and Network Administrators employed on the Afloat contract out of Chesapeake[9] have at least averred that they are similarly situated.

Finally, Plaintiffs have shown sufficient evidence of a common policy or plan that allegedly violates the law. Natasha Caines, SRA's former compensation analyst with the human resources department, testified that she determined SRA's position on which job titles of employees would be exempt from the FLSA. This policy – to classify certain employees as exempt – from among alternatives, applies equally to all members of the purported class. Although Defendant labors in its briefs to defend its method of assessing exemptions – which it contends is not an unlawful policy or plan – the method's propriety is not at issue at this stage, only its existence. See Def.'s Br. (ECF No. 27, at 18 n.9); Def.'s Sur-Reply (ECF No. 34-2, at 6-7). Obviously, Plaintiffs must identify more than a uniform system of defining exemptions. Here, they have. If Plaintiffs worked at the tasks they describe more than forty hours per week and were denied overtime compensation, SRA's policy of classifying that work as exempt allegedly caused Plaintiff's FLSA injury. See Oetinger v. First Residential Mortg. Network, Inc., No. 60-381, 2009 WL 2162963, at *3 (W.D. Ky. July 16, 2009).[10] Finally, Plaintiffs have shown that others are similarly classified as exempt, perform similar duties, on the same SRA contract, and also worked more than forty hours per week. Seven plaintiffs have filed consents to join the suit.

---

[9] This figure is based on the statement of Defedant's counsel at the hearing.

[10] The Oetinger court explained: "an employee's classification as an administrative employee is a defense to a claim for unpaid overtime wages, not a basis for the cause of action under the FLSA. Merely being classified as exempt does not give rise to a right of action under 29 U.S.C. 216(b). Such right under the FLSA only accrues once the employee is owed unpaid amounts. 29 U.S.C. 216(b). The Court believes that companies may indeed apply company-wide policies to their employees, but these policies must cause the alleged FLSA violation for the policy to be considered as a factor in determining whether employees are 'similarly situated' for purposes of bringing a collective action." 2009 WL 2162963, at *3.

In sum, Plaintiffs have presented evidence that the duties of Network and Systems Administrators working on the Afloat contract team are similar enough to give the Court "sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the[ir] FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." Houston, 591 F. Supp. 2d at 832.

### B. Plaintiffs Have Failed to Present Evidence to Warrant a Nationwide Class.

Although Plaintiffs have met their burden with respect to Afloat contract teams, they have not met their burden with respect to the rest of SRA's employees and locations.  As such, the Court will limit its certification to a more narrow and manageable class involving the Afloat contract only.

Again, the "lenient standard" for conditional certification allows for some differences among class members and recognizes that an individualized inquiry may be necessary in fashioning the specific relief or damages to be awarded to each class member. Houston, 591 F. Supp. 2d at 832.  However, the Court's role at this stage requires screening unmanageable or judicially inefficient classes. See Hoffmann-La Roche Inc., 493 U.S. at 170-71 ("[T]he court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.") (interpreting 29 U.S.C. § 216(b) as incorporated in the Age Discrimination in Employment Act).  A chief concern is whether the common issues allow the Court and litigants to address the class-wide claims without "becoming bogged down by individual differences among class members." Houston, 591 F. Supp. 2d at 832.  Here, certifying a class beyond the Afloat contract would not be a step towards judicial efficiency for several reasons.

First, geography limits what class will be manageable. SRA has more than thirty work locations in seventeen states. [11] It works on over 130 different contracts. SRA currently employs approximately 154 individuals as Systems or Network Administrators across its facilities. The geographic scope of SRA's operations simply disfavors nationwide certification because it will hinder the goals of the collective action: aiding in "the vindication of plaintiffs' rights by lowering the individuals' costs by pooling claims and resources." Houston, 591 F. Supp. 2d at 831. Conducting discovery across the country in an effort to maintain or decertify the class as the case proceeds would be expensive and inefficient for all litigants and their counsel. In addition, many of these contracts involve relatively few members of the purported class.

Second, Plaintiffs have presented no real evidence of the actual job duties of Network and Systems Administrators outside the Afloat teams. Notably, Plaintiffs have failed to offer even an affidavit from anyone involved with a different SRA contract or location despite the ample opportunity to conduct discovery. At the hearing, Plaintiffs' counsel acknowledged that Defendant had not resisted any request for discovery. To the contrary, SRA permitted corporate depositions and produced over 3,500 pages of written material. Decl. of Russell Bruch (ECF No. 27-14, at 2). Plaintiffs plainly have not sought to gain any evidence outside of the Afloat

---

[11] The MSC Afloat contract includes small teams based out of San Diego, California, (the Afloat Network Operations Center "ANOC" Team) and Pensacola, Florida (the Backup Network Operations Center "BNOC" Team), but the C4S Team based out of Chesapeake, Virginia includes almost ninety percent of the purported class members. Decl. of Kevin Brunner (ECF No. 27-12, at 2-3). The Systems and Network Administrators on these three different teams may perform different work. As Mr. Brenner stated, "because Systems Administrators and Network Administrators on the ANOC team provide remote support to part of the MSC fleet, and do not actually go out to ships to provide support, those individuals do not perform certain tasks that members of the C4S team may perform onboard MSC ships." Id. at 4. However, to the extent that there is variation in job duties among the Systems and Network Administrators in the three different locations, its effect on the feasibility of the proposed class is de minimis. The ANOC and BNOC teams constitute a small number of additional potential class members who work on the same contract for the same customer.

contract and instead, rested entirely on Ms. Caines' deposition testimony in their effort for nationwide certification.

Third and in contrast, Defendant has presented countervailing evidence that the Systems and Network Administrators perform different work in their daily activities on the Afloat contract compared to other locations and other contracts. See, e.g., Peacock Dep. (ECF No. 27-2, at 6-7); Decl. of Amit Puthran (ECF No. 27-8, at 2-3) (averring that he works out of Bethesda, Maryland on a National Institute of Health contract and that his work experience has involved "little to no travel"); Decl. of Tim Boyer (ECF No. 12-9, at 2-4) (averring that his primary work location is Boyers, Pennsylvania working exclusively on the OPM Network Operations & Security Services Project where he supervises more than ten Systems Administrators who "frequently exercise discretion and judgment" ); Decl. of Saqib Raheem (ECF No. 12-10, at 2-4) (averring that he has worked exclusively on the Windows server operations team within the Information Technology Services group based out of Fairfax, Virginia, which "does not provide support to an external client, as with many SRA contracts; instead [its] client is essentially SRA itself"); Decl. of Ryan Bess (ECF No. 12-11, at 2-4) (averring that he works out of Rockville, Maryland on a National Institute of Allergy and Infectious Diseases contract where he writes standard operating procedures for the "relatively new application" Microsoft Lync he works with exclusively).

Ms. Peacock testified:

Q. So if you have a network administrator under a different contract, am I to understand you are saying that they could be doing completely different things than, say, a network administrator under the Afloat contract?

A. Their specific duties could be different.

Q. So it's obvious that a network administrator working in, say, your California office could have a different daily task than someone working in the Chesapeake

office. But if they're labeled a network administrator, then they're generally going to be responsible for the same types of tasks regardless of the contract and they're going to have the same type of background and education and whatnot; is that correct?

A. I would say that their level of responsibility and their general duties and the level of work being performed would be the same, and then their specific duties would be different based on the contract and the program.

Q. And that also applies to systems administrators?

A. Correct

Peacock. Dep. (ECF No. 27-2, at 7).

Thus, it is clear that the class of similarly situated individuals warranted by Plaintiffs' evidence ends with the Afloat contract. Beyond that contract, SRA's Systems and Network Administrators are too disparately located and perform too disparate duties to be considered similarly situated for a FLSA collective action class. Their inclusion would render this litigation "bogged down by individual differences among class members." Houston, 591 F. Supp. 2d at 832. However, the Afloat team members represent almost a third of SRA's Systems and Network Administrators, all work for the same customer, on the same contract, using the same job description. Nearly all work out of the Chesapeake office within the Eastern District of Virginia. As a result, their claims arise from "a manageably similar factual setting" from which the Plaintiffs can seek to have others opt-in. De Luna-Guerrero, 338 F. Supp. 2d at 654.

## V. CONCLUSION

For the foregoing reasons, IT IS ORDERED that, pursuant to 29 U.S.C. § 216(b), the Court GRANTS Plaintiffs Conditional Class Certification and Notice under the FLSA to include the following similarly situated employees in the collective action:

All individuals who are or were employed by SRA at some time between May 7, 2011 and the present and worked on SRA's MCS Afloat Contract with the job title of:

> Associate Network Administrator,
>
> Network Administrator,
>
> Senior Network Administrator,
>
> Associate Systems Administrator,
>
> Systems Administrator,
>
> or Senior Systems Administrator.

IT IS FURTHER ORDERED that the Defendant shall provide to Plaintiffs' counsel the names, last known mailing addresses, home and/or mobile phone numbers, and email addresses of all potential members of the conditionally certified class within fifteen (15) days of the date of this Order.

IT IS FURTHER ORDERED that within fifteen (15) days of the date of this Order the parties shall provide the Court with a joint proposed form of notice to potential members to be approved by the Court. The form of Notice and Consent shall specify that the matter has been referred to the undersigned United States Magistrate Judge by consent of the parties. If the parties cannot agree on the terms of Notice, they shall each submit a draft by the deadline and the Court will issue approved Notice.

IT IS FURTHERED ORDERED that any consents to joinder in this action by which additional persons join this litigation as plaintiffs under 29 U.S.C. § 216(b) must be filed with the Clerk of the Court no later than ninety (90) days after the date of this Order.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

IT IS SO ORDERED.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 22, 2014

21